**Conzalos GLASCO, Appellant–Petitioner,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0306–PC–264.**

Court of Appeals of Indiana.

Feb. 6, 2004.

Transfer Denied April 12, 2004.

Susan K. Carpenter, Public Defender of Indiana, Cassandra J. Wright, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Stephen R. Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

The State of Indiana appeals from the granting of Glasco's Petition for Post Conviction Relief and the denial of his Motion to Correct Errors. We reverse and remand with instructions.

### THE ISSUE

The sole issue we need to be decided in this case is whether or not the decision of our supreme court in *Ross v. State,* 729 N.E.2d 113, (Ind.2000) has retroactive effect. We hold that it does not.

### FACTS

On July 6, 1999, pursuant to a plea agreement, Glasco pleaded guilty to carrying a handgun without a license, enhanced to a Class C felony by reason of a prior conviction, and to being an habitual offender as charged in Count II of the information filed against him. On that same date, the trial court sentenced Glasco to two years on the handgun conviction, which was enhanced by four years by reason of the habitual offender plea. Such sentencing was in accordance with the terms of the plea agreement that called for a total six-year sentence. The habitual offender count was predicated upon the same prior convictions as those requiring the elevation the handgun charge from a Class A misdemeanor to a Class C felony. Glasco did not appeal his sentence.

On May 25, 2000, nearly eleven months after Glasco's plea and sentencing, our supreme court decided *Ross,* a factually similar case, holding that where the defendant's sentence for carrying a handgun without a license was enhanced from a Class A misdemeanor to a Class C felony because of prior convictions, his sentence

could not be enhanced further as an habitual offender based upon the same prior convictions. On May 24, 2001, Glasco filed a petition for post-conviction relief alleging that he had been subjected to a double enhancement as prohibited by *Ross*. The trial court agreed with Glasco, and on the basis of *Ross*, granted the petition for post-conviction relief finding that the habitual offender adjudication was improper and vacating it thereby reducing Glasco's sentence to two years. In response to the State's motion to correct error, the trial court confirmed that the habitual offender adjudication was proper; however, the court increased the sentence on the handgun conviction to six years. Glasco now appeals.

## DISCUSSION AND DECISION

### Standard of Review

When the State appeals from the granting of a petition for post-conviction relief, it is not appealing from a negative judgment. *State v. Holmes*, 728 N.E.2d 164, 168, (Ind.2000), *cert. denied*, 532 U.S. 1067, 121 S.Ct. 2220, 150 L.Ed.2d 212 (2001). The standard of review is whether the judgment is clearly erroneous. Because there are no issues of fact involved, and we are faced solely with the question of whether the trial court properly applied the law, and we do not defer to the trial court's judgment as with respect to factual findings. *Id.* at 169.

### Retroactivity of Ross

Whether or not a decision has retroactive effect generally depends upon whether it announces a new rule of criminal procedure or was dictated by existing precedent. *Jacobs v. State*, 799 N.E.2d

1161 (Ind.Ct.App.2003). In *Jacobs*, a case with a strikingly similar factual scenario, a panel of this court held that *Ross* did not apply retroactively. The court there said that a decision announcing a new rule of criminal procedure generally is not applicable to cases on collateral review, meaning those which have become final before the new rule was announced. A conviction and sentence become final in that regard when the availability of direct appeal has been exhausted. *Id.* at 1165. The *Jacobs* court further held that no exceptions to that rule applied to Jacobs. *Id.* at 1167.

Here, Glasco's conviction and sentence were final almost a year prior to the decision in *Ross*. We agree with the decision in *Jacobs*, and we hold that *Ross* does not apply retroactively to Glasco's case and that the trial court judgment granting his petition for post-conviction relief was clearly erroneous. Therefore, we reverse the judgment of the trial court and remand to that court to vacate the granting of the post-conviction petition and change of Glasco's sentence. Furthermore, we order the trial court to reinstate the original sentence.[1]

KIRSCH, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The *Ross* decision itself was a retroactive application of its holding to the enhancement of Ross's offense from a Class A misdemeanor to a Class C felony and to the further enhancement pursuant to the general habitual offender statute. That holding invalidated the multiple enhancements relying upon the reasoning and analysis utilized in *Freeman v. State*, 658

---

1. Because of our decision, we need not address Glasco's contention that the trial court should have set aside his entire plea.

N.E.2d 68 (Ind.1995). Quite clearly, our Supreme Court in *Ross* unanimously felt that the result was the product of the *Freeman* decision. My reading of *Ross*, therefore, leads me to the unmistakable conclusion that the decision was "dictated by existing precedent," i.e. *Freeman*, and was not an announcement of a new rule of criminal procedure. For this reason, I disagree with the decision of this court in *Jacobs v. State*, 799 N.E.2d 1161 (Ind.Ct. App.2003), *reh'g pending*, which the majority here follows.

My view is not altered by the fact that the *Ross* decision was rendered upon transfer in a direct appeal from Ross's convictions and sentences. The question is whether Ross was entitled to the ameliorative effects of the Supreme Court decision. The same question is before us in this appeal even though it is from denial of post-conviction relief. Although our Supreme Court in *State v. Mohler*, 694 N.E.2d 1129 (Ind.1998), citing *Daniels v. State*, 561 N.E.2d 487 (Ind.1990), did not apply a retroactive application in a collateral attack as opposed to a direct appeal, it did so in the context of a "new rule of criminal procedure." 694 N.E.2d at 1133.

The number of years for which a defendant may be imprisoned for a particular offense—whether enhanced or increased by reason of a status or both—is not a matter of the procedure by which the substantive penalty or penalties are imposed, and the holding in *Ross* is therefore not the pronouncement of a new procedural rule. It is instead an interpretation of criminal statutes enacted by our General Assembly. The effect of such interpretation was addressed by the United States Supreme Court in *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

In *Bousley*, the defendant had pleaded guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1) in 1990. Following an unsuccessful appeal of his sentence, Bousley sought a writ of habeas corpus, which the District Court dismissed. While the appeal of this dismissal was pending, and five years after Bousley's guilty plea, the U.S. Supreme Court held in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), that "use" as defined in § 924(c)(1) required the government to show active employment of a firearm. Bousley then argued that *Bailey* should be applied "retroactively," and that his guilty plea was involuntary because he was misinformed about the elements of § 924(c)(1). The Eighth Circuit Court of Appeals affirmed the order of dismissal, and the Supreme Court granted certiorari.

The parties argued before the Court regarding whether, under the rule of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the rule in *Bailey* should be applied "retroactively." The *Bousley* Court wrote that it "did not believe that *Teague* governs this case.... Because *Teague* by its own terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." 523 U.S. at 620, 118 S.Ct. 1604. The Court then concluded that Bousley was not precluded from relying upon *Bailey* in support of his habeas claim. 523 U.S. at 621, 118 S.Ct. 1604. Justice Stevens put it more succinctly:

"This case does not raise any question concerning the possible retroactive application of a new rule of law ... because our decision in *Bailey* [ ], did not change the law. It merely explained what § 924(c) had meant ever since the statute was enacted." *Id.* at 625, 118 S.Ct. 1604 (Stevens, J., concurring in part and dissenting in part).

Justice Stevens also quoted with approval from *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), wherein the Court noted that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Bousley*, 523 U.S. at 626, 118 S.Ct. 1604.

The *Jacobs* court, in my opinion, unconvincingly attempted to distinguish *Bousley*. *See* 799 N.E.2d at 1165 n. 4. The *Jacobs* court noted that in *Bousley*, the defendant's claim was that his guilty plea was not knowingly or intelligently made, and that the *Bousley* Court noted that there was nothing new about this principle of law. The *Jacobs* court simply concluded that such was not the case before it. In this regard I suggest that *Jacobs* was wrongly decided. The import of the *Bousley* case was that the defendant could attack the propriety of his guilty plea by using the interpretation of § 924(c) found in *Bailey*, which was not decided until his habeas petition was pending upon appeal.

Here, the *Ross* court simply applied existing rules of statutory interpretation and the prior precedent of *Freeman*; it did not establish any new "procedural rule" or change the law. *Ross* merely explained what the statutes at issue here had meant since they were enacted. Just as the defendant in *Bousley* was not precluded from relying upon the statutory interpretation set forth in *Bailey*, so should Glasco not be precluded from relying upon the statutory interpretation found in *Ross*.

I would affirm the judgment of the post-conviction court.